**HUDIBURG CHEVROLET, INC., and Hudiburg Chevrolet Holding, Inc., Appellants,**

v.

**GENERAL MOTORS CORPORATION and Rawson–Koenig, Inc., Appellees.**

No. 05–02–01166–CV.

Court of Appeals of Texas, Dallas.

Aug. 5, 2003.

Rehearing Overruled Sept. 12, 2003.

Charles T. Frazier, Jr., Cowles & Thompson, P.C.; Richard F. Werstein, Matt Gilmore, Werstein & Wilson, Dallas, for appellants.

Deron Lynn Wade, Kyle Dreyer, Hartline, Dacus, Dreyer & Kern, L.L.P.; Elvin E. Smith, Michael Ames Hutton, Strasburger & Price, L.L.P.; A. Erin Dwyer, Figari Davenport & Graves, L.L.P.; James A. McCorquodale, J. Michael Colpoys, Vial, Hamilton, Koch & Knox, L.L.P., Dallas, for appellees.

Before Justices MORRIS, WHITTINGTON, and FRANCIS.

## OPINION

Opinion By Justice WHITTINGTON.

Hudiburg Chevrolet, Inc. and Hudiburg Chevrolet Holding, Inc. ("Hudiburg") appeal the trial court's order granting summary judgment in favor of General Motors Corporation ("GM") and Rawson–Koenig, Inc. ("Rawson"). In four issues, Hudiburg contends GM and Rawson were not entitled to summary judgment because GM and Rawson failed to conclusively establish (i) their entitlement to summary judgment on Hudiburg's statutory and common law claims; (ii) Hudiburg was not an innocent retailer; (iii) Hudiburg's negligence was the sole cause of the loss; and (iv) that requiring them to indemnify Hudiburg for its losses would violate their constitutional

rights. In a fifth issue, Hudiburg claims Rawson was not entitled to summary judgment on the ground that the underlying plaintiffs did not allege the service bed was defective. We reverse the trial court's judgment and remand this cause for further proceedings.

## BACKGROUND

Hudiburg is a Chevrolet dealer in Fort Worth. In late 1986, Hudiburg sold a new 1987 one-ton Chevrolet truck to Arthur Bewley. Hudiburg had received the cab chassis (i.e., a chassis, a drive train, and a cab on the front) from GM. Hudiburg's usual practice was to arrange for completion of the vehicle by having an independent contractor install a service bed on the chassis before the customer took possession. If the customer did not specify the type or kind of service body or bed, Hudiburg would select one based on price and quality. Because Bewley did not specify a preference, Hudiburg had B & M Truck Equipment install a "Koenig" bed, manufactured by Rawson, on the Bewley chassis.

On September 18, 1995, Robert Seaton was driving the Bewley truck when it was involved in a multi-vehicle accident.[1] While traveling east on Interstate 20 (I–20), the Bewley truck was hit from behind by a vehicle driven by Russell Morris. This caused the Bewley truck to cross the median into the westbound lanes of I–20 where it was hit by Ronald Anderson's vehicle. The collision resulted in a fire which severely injured Seaton and killed Anderson.

Anderson's survivors, Seaton, and Seaton's wife ("underlying plaintiffs") sued GM, Morris, and Hudiburg alleging products liability and other theories. Hudiburg filed cross-claims against the other parties for contribution and indemnity and joined Rawson and B & M. The parties entered into an agreed judgment on June 16, 1998 that settled the underlying plaintiffs' claims and specifically preserved Hudiburg's indemnity rights against GM and Rawson. B & M filed bankruptcy and was nonsuited.

Hudiburg's action for indemnity against GM and Rawson was filed pursuant to chapter 82 of the Texas Civil Practice and Remedies Code and common law. Both GM and Rawson filed general denials and motions for summary judgment. Rawson's motion for partial summary judgment alleged Hudiburg was not entitled to indemnity because the pleadings filed by the underlying plaintiffs did not allege a defect in the service body. GM filed a motion for summary judgment on the grounds Hudiburg was not entitled to indemnity because (i) it violated its duty not to negligently alter, modify, or complete the incomplete GM product by selecting and hiring a third party to do it; (ii) it was independently liable for selling a new and completed vehicle with defects that were not present when the cab chassis left GM's possession; and (iii) GM should not be liable for defects associated with the service body which Rawson manufactured. GM also alleged Hudiburg breached its duty to inspect the vehicle but subsequently entered into a rule 11 agreement with Hudiburg which withdrew this ground from the trial judge's consideration.

Rawson filed a supplemental motion for summary judgment, reasserting the ground raised in its motion for partial summary judgment and alleging Hudiburg was not entitled to indemnity because (i) Rawson established Hudiburg was independently liable for the damages to the underlying plaintiffs by breaching its duty not to negligently alter, modify, or com-

1. It is unclear whether Seaton purchased or borrowed the truck from Bewley.

plete the GM cab chassis and by breaching its duty to inspect the vehicle before releasing it to a consumer; (ii) Hudiburg was entirely responsible for selecting B & M to install the service bed and Hudiburg's sale of the vehicle with deficiencies in the service body installation represents an "other act" which bars Hudiburg's indemnity claims; and (iii) requiring Rawson to indemnify Hudiburg without a fact finding that Rawson was liable for the alleged injuries to the underlying plaintiffs by reason of a product defect would violate due process. The trial judge subsequently granted summary judgment in favor of GM and Rawson. This appeal followed.

## STANDARD OF REVIEW

■■■ The standards for reviewing summary judgments are well established. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. *See Elliott–Williams Co., Inc. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Bowles v. Yeganeh,* 84 S.W.3d 252, 254 (Tex.App.-Dallas 2002, no pet.). A motion for summary judgment must expressly present the grounds on which it is made, and it must stand or fall based on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 338 (Tex.1993). When, as in this case, the summary judgment order does not state the specific grounds upon which it is granted, the party challenging the order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Williams v. City of Dallas,* 53 S.W.3d 780, 784 (Tex.App.-Dallas 2001, no

pet.); *Orozco v. Dallas Morning News, Inc.,* 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.). We consider whether any theories asserted by the summary judgment movant will support the summary judgment and will affirm if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## INDEMNITY

Hudiburg sought indemnification against GM and Rawson under chapter 82 of the civil practice and remedies code and common law. Section 82.002(a) provides:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a) (Vernon 1997). A manufacturer is "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(4). For purposes of section 82.002, "a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(d). The only remaining common law indemnity "involve[s] purely vicarious liability or the innocent product retailer situation." *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.,* 751 S.W.2d 179, 180 (Tex.1988) (citing *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819–20 (Tex.1984)). To avoid indem-

nification, the manufacturer must establish the loss was caused by "the seller's negligence, intentional misconduct, or other act or omission." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a); *see Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 91 (Tex.2001) ("And while the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent conduct was a cause of the plaintiff's injury.").

## NEGLIGENCE

In its first three issues, Hudiburg contends the trial judge erred in granting summary judgment in favor of GM and Rawson because material fact issues exist and GM and Rawson failed to conclusively establish (i) their entitlement to summary judgment on Hudiburg's statutory and common law claims; (ii) Hudiburg was not an innocent retailer; and (iii) Hudiburg's negligence was the sole cause of the loss. Hudiburg notes that GM and Rawson did not challenge the elements of its claim but rather relied on the affirmative defense that Hudiburg's "negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product" barred any claim for indemnity. Hudiburg argues the threshold question this Court must decide is whether GM and Rawson conclusively proved (i) B & M was negligent and (ii) B & M's negligence was a cause of the underlying accident. Hudiburg reasons that if GM and Rawson failed to make these showings, Hudiburg cannot be negligent for contracting with B & M to install the service bed or failing to inspect the vehicle. Hudiburg claims that because GM and Rawson failed to conclusively prove B & M was negligent or that B & M's negligence was a cause of the underlying accident, summary judgment was improper on these grounds. After reviewing the summary judgment motions and evidence, we agree with Hudiburg.

■ The elements of negligence are the existence of a duty, the breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). "Negligent conduct is a proximate cause of harm to another if, in a natural and continuous sequence, the negligent conduct produces an event that causes the harm, and without the negligent conduct such event would not have occurred." *Dunnings v. Castro,* 881 S.W.2d 559, 561–62 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (citing *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991)). The components of proximate cause are cause in fact and foreseeability. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 784 (Tex.2001). Foreseeability requires that the actor, as a person of ordinary intelligence, would have anticipated the danger that his negligent act created for others. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987); *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex. 1987). The test for cause in fact is "whether the negligent act or omission was a substantial factor in bringing about injury *without which the harm would not have occurred."* *Boys Clubs,* 907 S.W.2d at 477 (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995)) (emphasis added).

■ Assuming without deciding that B & M owed the underlying plaintiffs the duty to exercise reasonable care in attaching the service body to the cab chassis and that it breached that duty, we consider whether GM and Rawson established as a matter of law that B & M's negligence proximately caused the underlying plaintiffs' injuries. *See Boys Clubs,* 907 S.W.2d at 477. In their motions for summary judgment, GM and Rawson alleged B &

M's "installation deficiencies" were a cause of the underlying plaintiffs' injuries. In support of this position, they rely on the affidavit of Alan Thebert. In his affidavit, Thebert testified the "primary crash factor, beyond [the driver's] loss of control, was separation of his truck's service/utility body from the truck's chassis. This separation pulled both fuel tanks' filler systems apart, and would thus necessarily allow liquid fuel exit." He further testified that the post-crash fire was enhanced by the damage to the fuel system and that such damage would not have occurred but for the separation of the "poorly attached service/utility body from the ... truck's chassis." Thebert then concluded that Hudiburg's negligence "which resulted in the vehicle's being delivered to Arthur Bewley with the service bed improperly attached to the back of the Seaton vehicle, is causally related to the injuries at issue in the underlying lawsuit." Thebert's affidavit, however, did not establish that the service bed would not have separated had it been properly attached. And, after reviewing all other summary judgment evidence, we find no other evidence establishing that, had the service bed been properly attached, it would not have separated. Because the summary judgment evidence failed to establish as a matter of law that, but for the negligent attachment or installation of the service bed, the injuries of the underlying plaintiffs would not have occurred, GM and Rawson failed to establish B & M's negligence, if any, proximately caused the injuries of the underlying plaintiffs. Moreover, because there is no evidence establishing that B & M's negligence, if any, proximately caused the underlying plaintiffs' injuries as a matter of law, it necessarily follows that the trial judge could not have properly granted summary judgment in favor of GM and Rawson on the grounds that Hudiburg's vicarious liability and failure to inspect constituted "negligence, intentional misconduct, or [an] other act or omission" which barred its indemnity claim. We sustain Hudiburg's second and third issues.

## UNDERLYING PLAINTIFFS' PLEADINGS

In its fourth issue, Hudiburg claims the trial judge erred in granting Rawson summary judgment on the ground that Hudiburg was not entitled to indemnity because the underlying plaintiffs' pleadings did not allege a defect in the service body. We agree.

In its motion for summary judgment and in its brief on appeal, Rawson argues Hudiburg is not entitled to indemnification from Rawson because the underlying plaintiffs did not specifically allege a defect in the Rawson service body. Rawson claims we must strictly construe a plaintiff's pleadings in determining whether a seller may seek indemnification from a manufacturer and that the failure to specifically identify every manufacturer and manufacturer's product in the pleadings bars the seller from seeking indemnification. In support of its argument, Rawson relies on the supreme court's discussions and holdings in *Meritor Automotive*, 44 S.W.3d at 91 ("[T]he manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings.") and *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 867 (Tex.1999) ("[O]nly manufacturers of a product alleged by a plaintiff to have been defective are subject to a claim of indemnity.").

Citing *Fitzgerald*, Rawson argues it cannot be required to indemnify Hudiburg because the underlying plaintiffs did not specifically name Rawson as a manufacturer or allege the service body was defective. In *Fitzgerald*, the supreme court was asked to determine whether a manufacturer was required to indemnify an innocent

seller of a product for costs the seller incurred to defend himself when, in fact, the seller had not sold the particular product alleged to have caused harm. *Fitzgerald,* 996 S.W.2d at 864–65. Fitzgerald sold spinal fixation devices in Texas and New Mexico. The plaintiffs sued the manufacturer of the devices, Advanced Spine Fixation Systems, and numerous sellers of the devices, including Fitzgerald. The district court later dismissed the claims against Fitzgerald because he had not sold the particular devices implanted in the plaintiffs. Fitzgerald then sought indemnity from the manufacturer for the costs Fitzgerald incurred to defend himself prior to the dismissal. *Fitzgerald,* 996 S.W.2d at 865. The supreme court held Fitzgerald was entitled to indemnification under chapter 82. *Fitzgerald,* 996 S.W.2d at 869. The court noted that the legislature, in enacting chapter 82, "sought to protect both manufacturers and sellers, but gave preference to sellers with no independent liability." *Fitzgerald,* 996 S.W.2d at 865. The court did not address pleading requirements or whether a plaintiff was required to allege specific products by name. *Fitzgerald,* 996 S.W.2d at 867.

Rawson also argues that the supreme court's holding in *Meritor* requires the manufacturer or product be specifically named by the underlying plaintiff to invoke the duty to indemnify. In *Meritor,* Paul Hampton filed a products liability claim against the truck's manufacturers, Freightliner Corporation and Meritor Automotive, for injuries he received while working on the Freightliner truck he was driving. Hampton amended his petition to add a cause of action for negligence against Ruan Leasing Company, the truck's owner. Ruan filed a cross-claim against the manufacturers, seeking indemnification for all damages and expenses. Hampton subsequently settled with the manufacturers and filed a nonsuit of his claim against Ruan. *Meritor,* 44 S.W.3d at 87. The trial judge granted summary judgment in favor of Ruan on its remaining cause of action against the manufacturers for indemnity. On appeal, the manufacturers complained the trial judge erred because chapter 82 did not require that they indemnify Ruan for its costs to defend the negligence action. The manufacturers argued "the negligence claim was not a part of the products liability action" and, therefore, the summary judgment was improper. *Meritor,* 44 S.W.3d at 88. The supreme court held that "all direct allegations against the seller that relate to plaintiff's injury [are considered] as part of the 'products liability action' and that we exclude only those losses 'caused by' the seller." *Meritor,* 44 S.W.3d at 90.

■■■ Although Rawson relies on these cases for the proposition that a plaintiff's pleadings must allege the specific manufacturer and manufacturer's products by name, we cannot agree. Although the supreme court stated the duty to indemnify is invoked by the plaintiff's pleadings, it did not require that a plaintiff allege specific products or manufacturers by name. *Fitzgerald,* 996 S.W.2d at 867; *Meritor,* 44 S.W.3d at 90–91. Rather, if the factual allegations of the plaintiff's petition can reasonably be construed to present a claim of a defective product, the seller has the right, under chapter 82, to seek indemnity against any "designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or component part thereof in the stream of commerce." *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(4). The defendant seller may make this determination and bring a claim for indemnity even when a product or component part or manufacturer has not been identified by name. In

this case, the underlying plaintiffs' petition alleged a products liability action involving "the Chevrolet pickup [which] had installed on it a service body." This language, together with the factual allegations in the plaintiff's petition, may reasonably be construed to include a claim that the service body manufactured by Rawson was defective. Because the underlying plaintiffs' pleadings can be reasonably construed to present a claim that Rawson's service body was defective, we conclude summary judgment in favor of Rawson on this ground was improper. We sustain Hudiburg's fourth issue.

### VIOLATION OF DUE PROCESS RIGHTS

In its final issue, Hudiburg contends the trial judge erred in granting summary judgment to GM and Rawson on the ground that chapter 82 violates their rights to due process.

#### GM's Motion for Summary Judgment

 In its motion for summary judgment, GM alleged Hudiburg should not be entitled to indemnification because the application of chapter 82 would violate GM's substantive due process rights under the Fourteenth Amendment to the United States Constitution. The gist of GM's constitutional challenge, however, is that because GM "extinguished its potential exposure" for claims involving any purported defects associated with the fuel system by settling with the underlying plaintiffs, requiring GM to indemnify Hudiburg for any remaining settlement amounts "would be overwhelmingly arbitrary and irrational." GM does not cite us to any place in the record containing evidence of the terms of the settlement agreement. Although all parties agree the underlying case settled, nothing in the record establishes what portion of the total settlement was attributable to the alleged fuel system defects or

what amount was paid by GM. Because there is no summary judgment evidence in the record to support GM's assertions under this issue, we conclude GM was not entitled to summary judgment on this ground. We sustain Hudiburg's final issue to the extent it challenges the summary judgment in favor of GM.

#### Rawson's Motion for Summary Judgment

 In its motion for summary judgment, Rawson argued that the trial judge could not require Rawson to indemnify Hudiburg without a finding that Rawson was liable for the underlying plaintiffs' injuries. Here, Rawson has not been ordered to indemnify Hudiburg. Because whether Rawson will be ordered to indemnify Hudiburg remains hypothetical, any discussion on this issue would be purely advisory. *See Camarena v. Tex. Employment Comm'n,* 754 S.W.2d 149, 151 (Tex. 1988) ("It is fundamental that a court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe."). We conclude summary judgment on this ground was improper. We sustain Hudiburg's final issue to the extent it challenges the summary judgment in favor of Rawson and Hudiburg's first issue.

We reverse the trial court's summary judgment and remand this cause for further proceedings.